KLESTADT WINTERS JURELLER
   SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
John E. Jureller, Jr.
570 Seventh Avenue, 17th Floor
New York, NY 10018
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for FTI Consulting, Inc., solely in its capacity as Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DEWEY & LEBOEUF, LLP, | Case No. 12-12321(MG) |
| Debtor. | |
| FTI CONSULTING, INC., solely in its capacity as Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013, | Adv. Pro. No. 15-_____-mg |
| Plaintiff, | |
| v. | |
| INDUSTRIAS UNIDAS, S.A. de C.V., | |
| Defendant. | |

# **COMPLAINT**

Plaintiff, FTI Consulting, Inc., solely in its capacity as Liquidating Trustee of the Dewey

1

& LeBoeuf Secured Lender Trust established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013 ("Plaintiff" or "Trustee"), by and through its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for its complaint (the "Complaint") against Industrias Unidas, S.A. de C.V. ("Defendant"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference Re: Title 11 of the United States District Court for the Southern District of New York dated January 31, 2012. The statutory predicates for the relief request herein is 11 U.S.C. §§ 541 and 542.

2. This is a core proceeding pursuant to 28 U.S.C. §157(b).

3. Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.

4. The Court has *in personam* jurisdiction over Defendant pursuant to the applicable rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the New York Civil Practice Law and Rules (the "CPLR"), including sections 301 and 302 of the CPLR.

5. By agreement ("Engagement Agreement"), dated June 13, 2011, Plaintiff and Defendant contractually agreed that (i) the Engagement Agreement shall be governed by, and construed in accordance with, the law of the State of New York, exclusive of conflict of laws, and (ii) all actions or proceedings arising out of or relating to the Engagement Agreement shall be heard and determined in New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction all parties to the Engagement Agreement irrevocably and exclusively submit.

6. Upon information and belief, the Engagement Agreement was executed in the

United States, and the services were provided in the United States and any payments for such services, to extent made by Defendant, were received by the Debtor in the United States.

## PROCEDURAL BACKROUND

7.      On May 28, 2012 (the "Petition Date"), Dewey & LeBoeuf LLP ("DL" or the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") commencing the above-captioned chapter 11 case (the "Chapter 11 Case").

8.      On January 7, 2013, the Debtor filed its Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013 (the "Plan").

9.      On February 27, 2013 the Bankruptcy Court entered its Order Confirming Debtor's Modified Second Amended Plan of Liquidation of Dewey & LeBoeuf LLP, Dated January 7, 2013 (the "Confirmation Order") which confirmed the Plan, as modified.

10.     Pursuant to Section 7.1(a) of the Plan, as of the Effective Date, the Secured Lender Trust was formed to liquidate the Secured Lender Trust Assets (as defined in the Plan).

11.     Pursuant to Section 1.141 of the Plan, the term "Secured Lender Trust Assets" means "all (a) WIP, (b) Receivables, (c) Foreign Office Recoveries (d) Receivables Cash Collateral, excluding the Liquidation Trust Funding Amount, the Admin/Priority Claims Reserve, (e) all additional assets transferred or assigned to the Secured Lender Trust, (f) any documents and data evidencing, or otherwise relating thereto, and (g) all Causes of Action relating to the foregoing."

12.     Pursuant to Section 1.125 of the Plan, the term "Receivables" means "collectively and individually, as applicable, accounts receivable generated or otherwise owned by the Debtor,

3

any of its branch offices (foreign or domestic) or any of its affiliates (foreign or domestic) arising out of or in connection with the Debtor's pre-petition rendering of services, including the Debtor's rights to be compensated for its services and reimbursed for related costs and expenses incurred, amounts disbursed or obligations incurred for the account of the Debtor's clients for fees paid or payable to, or goods or services obtained from, Partners and Employees or third-parties, whether or not the Debtor has rendered a bill for such services or disbursements or entered the value of such services or disbursements in its books as accounts receivable, whether or not such services or disbursements have been completed and whether or not an express or implied agreement for compensation for such services or reimbursement for such disbursements exists, *provided, however*, that Receivables shall not include proceeds from Unfinished Business Claims unless such proceeds are directly attributable to the Debtor's rendering of pre-petition services, *provided further* that Receivables shall not include Harris Contingency Fee Claims. For the avoidance of doubt, Receivables shall include any amounts owed by Arab Bank plc (whether contingent or otherwise) in connection with the Debtor's pre-petition rendering of legal services; provided that any Claims against Partners of the Debtor (and their respective law firms) arising out of legal services rendered by such Partners (and their respective law firms) to Arab Bank plc after such Partners' departure from the Debtor shall be treated as Unfinished Business Claims."

13.     Pursuant to Section 1.162 of the Plan, the term "WIP" means "all work in process of the Debtor, any of its foreign or domestic branch offices or any of its foreign or domestic affiliates that has not yet been converted to Receivables."

14.     Pursuant to paragraph 52 of the Confirmation Order, the "Secured Lender Trustee shall be appointed representative of the Estate, and shall have comparable authority as a bankruptcy trustee of the Debtor, and exclusively retain and may prosecute and enforce, and the

Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action to the extent they are Secured Lender Trust Assets."

15. Pursuant to section 1.21 of the Plan, the term "Causes of Action" means "any and all Claims, rights, actions, choses in action, suits, causes of action, liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including, without limitation, Receivables, actions to collect Reconciliation Amounts and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law (including rights and remedies arising under Chapter 5 of the Bankruptcy Code)."

16. Pursuant to section 1.22 of the Plan, the term "Claim" means "(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

17. Pursuant to Section 7.11 of the Plan, on the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate are preserved for the benefit of holders of the Liquidation Trust Interests and Secured Lender Trust Interests and were to be transferred to and vested in the Liquidation Trust and Secured Lender Trust, as applicable.

5

18. Pursuant to paragraph 89(e) of the Confirmation Order, the Bankruptcy Court retained jurisdiction to, among other things, "adjudicate such contested and non-contested matters, adversary proceedings involving the Debtor as may be pending or subsequently initiated in the Bankruptcy Court including, but not limited to Causes of Action or Claims captured within this Plan."

19. Pursuant to paragraph 42 of the Confirmation Order, on the Effective Date (as defined by the Plan) FTI Consulting, Inc. is deemed appointed as the Secured Lender Trustee.

20. Pursuant to paragraph 44 of the Confirmation Order, on the Effective Date (as defined by the Plan) the Debtor was deemed to have transferred and assigned to the Secured Lender Trust the Secured Lender Trust Assets, which were deemed to have vested in the Secured Lender Trust.

21. Pursuant to paragraph 45 of the Confirmation Order, all transfers of property to the Secured Lender Trust were legal, valid and effective transfers of property, and vested the Secured Lender Trust with good title to such property free and clear of all liens, charges, claims, encumbrances or interests, except as expressly provided in the Plan or Confirmation Order.

22. Pursuant to section 1.44 of the Plan, the term "Effective Date" means "the first Business Day after the later of the date (a) that the Confirmation Order (together with other orders entered in aid of confirmation of this Plan, and signed contemporaneously with the Confirmation Order) has been entered pursuant to Bankruptcy Rules 5003 and 9021; and (b) on which all conditions precedent have been satisfied or waived as provided in Sections 12.2 and 12.3 hereof."

23. The Effective Date of the Plan occurred on March 22, 2013, and, pursuant to the Plan, the Secured Lender Trust was established, the Secured Lender Trust Assets were

transferred to the Secured Lender Trust, and the Plaintiff was appointed as Liquidating Trustee.

## THE PARTIES

24.     Plaintiff is a Maryland corporation, acting solely in its capacity as Liquidating Trustee of the Secured Lender Trust (as defined by the Plan) established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013, with a place of business at 3 Times Square, New York, New York 10036.

25.     Upon information and belief, Defendant is a company established under the laws of Mexico, with its principal offices located at Pasco de la Reforma No. 2608, Piso 21 Col. Lomas Altas, C.P. 11950 Mexico City, Mexico, and having a U.S. office located at 701 Brickell Avenue, Suite 1250, Miami, Florida 33131.  Defendant was a former client of the Debtor.

## NATURE OF THE ACTION

26.     This action is commenced by Plaintiff, as assignee of the Debtor pursuant to the Plan, for recovery of Fees (as defined below) and Expenses (as defined below) incurred by the Debtor on behalf of Defendant in providing legal services requested by Defendant and performed by Debtor, for which the Debtor provided Invoices (as defined below) and which Defendant, despite repeated request, has failed and refused to pay.

## FACTUAL BACKGROUND

27.     Defendant was formerly a client of the Debtor, including during the period starting on or about June 13, 2011 and continuing through at least April 2012 (the "Relevant Period").

28.     During the Relevant Period, Defendant engaged and retained the Debtor to provide the Defendant certain legal services in the United States.

7

29. On or about June 13, 2011, Defendant agreed to the terms of, and executed and delivered to the Debtor, the Engagement Agreement which governs the respective rights and obligations of the Debtor and Defendant, and pursuant to which the Debtor agreed to provide certain legal services to the Defendant, and Defendant agreed to pay fees and disbursements in accordance with the terms of the Engagement Letter. Upon information and belief, the Engagement Agreement was executed by the Debtor and/or Defendant in the United States.

30. During the Relevant Period, Defendant requested that the Debtor perform certain legal services for Defendant's benefit.

31. During the Relevant Period, the Debtor provided legal services to and for the benefit of Defendant in various matter.

32. Defendant agreed to pay the Debtor its customary rates for the legal services rendered (the "Fees"), and to reimburse the Debtor for disbursements made by the Debtor in the course of providing legal services to Defendant (the "Expenses").

33. The Debtor billed Defendant for the Fees and Expenses during the Relevant Period and transmitted the invoices (individually an "Invoice", or collectively as the "Invoices") to the Defendant for the Fees and Expenses, on the dates and the amounts summarized on **Schedule A** hereto, which is incorporated herein by reference. Any payments made by Defendant were made to the Debtor in the United States.

34. The Debtor made numerous demands to Defendant to fully and completely pay the Invoices; however, to date, Defendant has refused to make full payment of the amounts set forth in the Invoices.

35. Despite due demand, Defendant has failed and refused to pay the Invoices, for Fees and Expenses for legal services rendered and reimbursement of expenses, the sum of which

8

equal and have a value of $154,304.79 (the "Invoiced Amount").

## FIRST CAUSE OF ACTION
## DECLARATION THAT FEES AND EXPENSES INVOICESD
## AND DUE AND OWING ARE PROPERTY OF THE ESTATE (11 U.S.C. § 541)

36.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 35 above, with the same force and effect as if set forth at length herein.

37.     Pursuant to section 541(a)(1) of the Bankruptcy Code, property of the estate is defined to consist of all legal or equitable interests of the debtor in property as of the commencement of the case.

38.     Therefore, the Invoiced Amount due and owing to the Debtor by Defendant in the sum of $154,304.79 are property of the Estate despite the fact that they are in the possession of Defendant, because Congress intended a broad range of property to be included in the estate.

39.     Plaintiff is therefore entitled to a declaration that the Invoiced Amount due and owing to the Debtor by Defendant in the sum of $154,304.79 is property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
## TURNOVER OF THE INVOICESD AMOUNT DUE AND
## OWING AS PROPERTY OF THE ESTATE (11 U.S.C. § 542)

40.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 39 above, with the same force and effect as if set forth at length herein.

41.     Defendant has failed and refused to turn over the payments due and owing to the Debtor by Defendant in the sum of $154,304.79, despite due demand therefore.

42.     Pursuant to section 542 of the Bankruptcy Code, Defendant is required to deliver to Plaintiff, as the Debtor's assignee, and account for, such property or the value of such property, unless such property is of inconsequential value.

43. Pursuant to section 542 of the Bankruptcy Code, Plaintiff is entitled to immediate turn over and payment of the Invoiced Amount due and owing to the Debtor by Defendant in the sum of $154,304.79, because it is property of the Debtor's estate as defined under section 541 of the Bankruptcy Code.

44. As a result of the foregoing, Plaintiff requests that the Court enter a judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 above, with the same force and effect as if set forth at length herein.

46. During the Relevant Period, the Debtor conferred a benefit upon Defendant by rendering legal services to Defendant and advancing expenses, at Defendant's specific insistence and request, in a total value of $154,304.79, of which amount Defendant has not paid the sum of $154,304.79.

47. Defendant, without objection, knowingly and willingly accepted the benefit of the Debtor's legal services.

48. By virtue of the foregoing, Defendant has been unjustly enriched in the amount of $154,304.79, the agreed price and the reasonable value of the legal services provided by the Debtor and the disbursements that the Debtor expended in rendering said legal services.

49. As a result thereof, Defendant is indebted to the Debtor's estate for the sum of $154,304.79.

50. No part of the said $154,304.79 has been paid although payment has been due and duly demanded, resulting in a balance of $154,304.79 due and owing by Defendant to Plaintiff.

51. As a result of the foregoing, the Debtor's estate has been damaged in the sum of $154,304.79 and requests that the Court enter judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

### FOURTH CAUSE OF ACTION
### QUANTUM MERUIT

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 above, with the same force and effect as if set forth at length herein.

53. During the Relevant Period, the Debtor rendered legal services to Defendant, the fair and reasonable value of which services is $154,304.79.

54. Defendant has failed and refused to pay the balance of the Invoices due in the sum of $154,304.79.

55. Defendant, without objection, knowingly and willingly accepted the benefit of the Debtor's legal services.

56. The Debtor, in rendering such legal services and through Defendant's actions, reasonably expects and expected to be paid for the value of the services rendered and to recover in *quantum meruit*.

57. As a result thereof, Defendant owes the Debtor's estate the sum of $154,304.79.

58. As a result of the foregoing, the Debtor's estate has been damaged in the sum of $154,304.79 and requests that the Court enter judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

### FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, with the same force and effect as if set forth at length herein.

60. Pursuant to the agreement of the parties herein, Defendant is obligated to pay the Debtor the sum of $154,304.79 for legal services rendered by the Debtor to Defendant, at Defendant's specific instance and request.

61. Defendant's continued failure to pay the Debtor or its Estate the sum of $154,304.79 for legal services that the Debtor rendered to Defendant is a continuing breach of the agreement or agreements into which the Debtor and Defendant entered.

62. No part of the said $154,304.79 has been paid although payment has been due and duly demanded, resulting in a balance due and owing to the Debtor's estate by Defendant in the sum of $154,304.79.

63. As a result of Defendant's breach, the Debtor's estate has been damaged in the sum of $154,304.79 and requests that the Court enter a judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63, with the same force and effect as if set forth at length herein.

65. Defendant, by its actions, impliedly agreed that the Debtor would be paid for the legal services that the Debtor rendered to Defendant, at the Debtor's customary billing rates.

66. Defendant's continued failure to pay the Debtor the sum of $154,304.79 for legal services that the Debtor rendered to Defendant is a continuing breach of the implied agreement or agreements into which the Debtor and Defendant entered.

67. No part of the said $154,304.79 has been paid although payment has been due and duly demanded, resulting in a balance due and owing to the Debtor by Defendant in the sum of $154,304.79.

68. As a result of the foregoing, the Debtor has been damaged in the sum of $154,304.79, and requests that the Court enter judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

## SEVENTH CAUSE OF ACTION
## ACCOUNT STATED

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68, with the same force and effect as if set forth at length herein.

70. The amounts due and owing from Defendant to the Debtor are set forth in the Invoices transmitted to Defendant in the regular course of the Debtor's business, less any amounts previously paid by the Defendant.

71. An account was taken and stated between the Debtor and Defendant, and delivered to Defendant as evidenced by the Invoices.

72. Defendant did not timely contest or object to the Invoices.

73. By reason of the aforementioned account stated, there is due and owing to the Debtor by Defendant the sum of $154,304.79, plus interest thereon.

74. As a result of the foregoing, the Debtor has been damaged in the sum of $154,304.79, and requests that the Court enter judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter (i) an order directing Defendant to turn over and make payment of the balance due and owing to Plaintiff in the sum of $154,304.79, (ii) an order entering judgment in favor of Plaintiff as against Defendant in the sum of $154,304.79, plus interest thereon, and (iii) an order granting Plaintiff its costs and expenses, including legal fees, in this matter, together with such other, further, and different relief as the Court deems just and proper.

Dated: New York, New York
       January 9, 2015

                                              KLESTADT & WINTERS, LLP

                                              By: */s/ John E. Jureller, Jr.*
                                                    Tracy L. Klestadt
                                                    John E. Jureller, Jr.
                                              570 Seventh Avenue, 17th Floor
                                              New York, New York 10018
                                              T: (212) 972-3000
                                              F: (212) 972-2245

                                              *Attorneys for FTI Consulting, Inc., solely in its Capacity as Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013*

**Schedule A**

| INVOICES NUMBER | DATE OF INVOICES | INVOICES AMOUNT | AMOUNT PAID | BALANCE |
|---|---|---|---|---|
| 642992 | 1/17/2012 | $71,280.46 | $0.00 | $71,280.46 |
| 643007 | 1/17/2012 | $18,496.56 | $0.00 | $18,496.56 |
| 645008 | 1/31/2012 | $81,224.80 | $34,039.56 | $47,185.30 |
| 652626 | 4/24/2012 | $17,342.47 | $0.00 | $17,342.47 |
| | | | | **Total: $154,304.79** |